UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RAYMOND DAVIS,                                :
                                             :           **MEMORANDUM & ORDER**
                              Plaintiff,      :
                                             :           **11-CV-4868 (ENV)**
        -against-                             :
                                             :
OFFICER LIZABETH KLEIN, OFFICER TODD :
KEYES, SERGEANT FRANK CROCITTO      :
                                             :
                             Defendants.      :
------------------------------------------------------------------x
VITALIANO, D.J.

Plaintiff Raymond Davis brings this suit, *pro se*, pursuant to 42 U.S.C. § 1983, against Officer Lizabeth Klein, Officer Todd Keyes and Sergeant Frank Crocitto. He alleges the use of excessive force, false arrest and an unlawful strip search, all arising out of his arrest and booking. By motion dated December 17, 2012, defendants seek summary judgment on all claims. Plaintiff has failed to respond to that motion. For the reasons discussed below, the motion is granted in its entirety.

### Background

On the afternoon of July 8, 2011 Davis was caught shoplifting at a Marshall's clothing store in Queens. Compl. at 4. When the store security officer confronted plaintiff about the stolen merchandise, he removed a pair of pliers from his pocket and pointed them at the security officer "in a threatening manner." Declaration of Aimee K. Lulich ("Lulich Decl."), Ex. C. Following a brief stand-off, Davis fled the store, but was apprehended by police officers a short distance away. When stopped, police officers found both unreceipted Marshall's merchandise and a pair of pliers

1

in Davis's possession.  At this point, the stories diverge.  Defendants contend, consistent with what is contained in the police report, that Davis resisted arrest by "flailing violently," "refusing to be rear handcuffed" and "assaulting police officer Keyes."  Id.  Davis, on the other hand, denies actively resisting arrest.  According to his complaint and deposition testimony, during the arrest several of the officers threw him up against a wall and kicked and punched him repeatedly in the head, face and back.  Compl. at 5; Lulich Decl. Ex. B.  Davis further testified that, as a result of this arrest process, he suffered bruises, scrapes, a "busted" lip, and a swollen face.  Id.

Once subdued, Davis was transported to the precinct, where he was booked and prepared for processing.  As Officer Keyes tells it, Davis again resisted when he attempted to remove Davis's belt, punching and kicking him and causing him to fall and twist his knee.  Indeed, medical records show that Officer Keyes received treatment for a "left knee contusion" at Forest Hills Hospital on that same day.  See Lulich Decl. Ex. G.  Davis, on the other hand, claims that, during booking, the officers stripped him of his clothes, handcuffed him and began to beat him.  Compl. at 5.  While Davis was handcuffed in the holding cell, officers allegedly punched him in his face multiple times in an effort to remove Davis's pants and sneakers.  Finally, according to plaintiff, Officer Keyes engaged in "inappropriate . . . touching" while Davis was in the holding cell by placing his hand inside of Davis's underwear and attempting to touch Davis's anus.  Compl. at 5; Lulich Decl. Ex. B.  Davis testified

that, when Officer Keyes placed his hand inside of his underwear, he, Davis "went crazy" and, as a result, Officer Keyes never actually touched his anus. Id.

Following booking, Davis was transported that same evening to Elmhurst Hospital. According to Davis, the medical records "show[] [he] made [a] complaint about [his] head and leg and back." Compl. at 7. Medical records do indicate that Davis lodged a complaint about back and wrist pain. More dispositively, however, viewed in their entirely, the hospital records are wholly inconsistent with and offer no support for the type of brutality that Davis alleges. In fact, the medical records leave no doubt that Davis "denie[d] any bleeding/swelling/ecchymosis on the wrist/head area" and that his "forearm appearance [was] normal." See Lulich Decl. Ex. H. Further, the records indicate that plaintiff was classified as "Non-Urgent," he had "no skin abrasions" and his head was "normocephalic and atraumatic." Id. Finally, the hospital records demonstrate that plaintiff actually refused further medical treatment, stating to the doctor, "I am good." Id.

On September 21, 2011, Davis pled guilty to petit larceny and resisting arrest charges that arose out of the subject incident. He was sentenced to and served 8 months in jail. See Lulich Decl. Ex. L.

<u>Standard for Summary Judgment</u>

Pursuant to Rule 56, a federal district court must grant summary judgment upon motion and finding, based on the pleadings, depositions, interrogatory answers, admissions, affidavits, and all other admissible evidence that "there is no genuine issue as to any material fact and that the moving party is entitled to a

3

judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Feingold v. New York</u>, 366 F.3d 138, 148 (2d Cir. 2004). In determining whether the moving party has met this burden, a court must construe all evidence in a light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); <u>Gibbs-Alfano v. Burton</u>, 281 F.3d 12, 18 (2d Cir. 2002). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original); <u>Burt Rigid Box, Inc. v.</u> <u>Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 90 (2d Cir. 2002). Material facts are those which, given the substantive law, might affect the suit's outcome. <u>Anderson</u>, 477 U.S. at 248.

If the moving party makes a *prima facie* showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and put forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>Davis v. New York</u>, 316 F.3d 93, 100 (2d Cir. 2002). In so doing, the nonmoving party may not rely on conclusory allegations or speculation. <u>Golden</u> <u>Pac. Bancorp v. FDIC</u>, 375 F.3d 196, 200 (2d Cir. 2004) (citing <u>D'Amico v. City of</u>

4

New York, 132 F.3d 145, 149 (2d Cir.1998)); Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Thus, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Matsushita, 475 U.S. at 586). Nonetheless, the nonmoving party need not make a compelling showing; it need merely show that reasonable minds could differ as to the import of the proffered evidence. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997).

Mindful that plaintiff is proceeding *pro se*, the Court additionally reads his papers liberally and interprets them as raising the strongest arguments they suggest. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Moreover in that regard, plaintiff's failure to oppose this motion does not relieve the Court of its responsibility to independently assess whether the summary judgment that motion seeks is warranted on the record. Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).

### Discussion

I.     False Arrest

Construing plaintiff's complaint liberally, plaintiff appears to be pursuing a false arrest claim under § 1983. The record is fatal to any such claim. Where a plaintiff is convicted for an offense for which he was arrested, his claim of false

arrest cannot succeed as a matter of law. <u>See</u> <u>Allison v. Farrell</u>, 97 Civ. 2247 (DAB), 2002 WL 88380, at *4 (S.D.N.Y. Jan. 22, 2002); <u>Cameron v. Fogarty</u>, 806 F.2d 380, 388-89 (2d Cir. 1986) ("[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause."). It is undisputed that Davis pled guilty to petit larceny and resisting arrest, crimes for which the subject arrest was made. Plaintiff has not shown, nor is there any reason to believe he could, that this conviction has been reversed on appeal, called into question by a federal court's issuance of a writ of habeas corpus, or otherwise invalidated in any other way. The unassailed conviction slams the courthouse door on this claim. <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). Summary judgment dismissing this claim is granted.

## II.   Excessive Force

Plaintiff claims that officers used excessive force both in effectuating his arrest and in conducting a search of his person at the precinct as part of the booking process. The Court "analyzes claims of excessive force arising in the context of an arrest under the Fourth Amendment's objective reasonableness test, paying careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Phelan v. Sullivan</u>, 2013 U.S. App. LEXIS 19147 at *6 (2d Cir. Sept. 17, 2013) (citation omitted). It is the standard that applies

to both the arrest and the post-arrest booking process. Campbell v. City of New York, 2010 U.S. Dist. LEXIS 66389 at *24 (S.D.N.Y. 2010). "Officers are entitled to use some degree of force when restraining a suspect during an arrest." Faruki v. City of New York, 517 Fed. Appx. 1, 2 (2d. Cir. Feb 7, 2013); see also Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.")

In this case, it cannot be genuinely disputed that Davis actively resisted arrest and booking. He took flight from the scene of the crime, brandished a weapon to make his escape and forcefully resisted arrest and booking. Responding police officers were, clearly, justified in using some measure of force in arresting Davis, in booking him and in preparing him for detention. Without the slightest doubt the use of force by the police in arresting and processing Davis was entirely justified. He pleaded guilty to a criminal charge that he physically resisted the officers arresting him, and even admitted that he "went crazy" during the search of his person and other procedures incident to his preparation for detention in the precinct lock-up. That the use of force was so well-justified, of course, does not mean its use was without limit. Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit.") Though

vigorously denied by defendants, in sum and substance, the abuse of the right to use force is what Davis alleges.

The Court, as is basic, must resolve all ambiguities in favor of the non-moving party. Such ambiguity, where different versions of the force employed are stated, might arise; that is, if all that was in the record were the bald story-telling by each side. But, here, there is more and it is significant, since, where undisputed medical records *directly and irrefutably* contradict a plaintiff's description of his injuries, no reasonable jury could credit plaintiff's account of the happening. <u>Bove v. City of New York</u>, 1999 WL 595620 at *6 (S.D.N.Y. 1999) (granting summary judgment on an excessive force claim where plaintiff's "allegations [were] completely contradicted by the hospital's records.") In this case, the hospital records from the evening of Davis's arrest demonstrate that, at most, Davis had minor soreness in his wrist. <u>See</u> Lulich Decl. Ex. H. If officers had repeatedly punched plaintiff during the arrest and booking process, as he alleges, it is simply not believable that the hospital records would indicate that Davis had "no skin abrasions" and that his facial appearance was "normocephalic and atraumatic." These medical records, bluntly, directly contradict the version of facts plaintiff gave in his complaint as well as in his deposition (testimony that his face was "swollen" and covered in "knots" as a result of a "brutal beating" administered by the police). Further, the record is utterly devoid of evidence of any kind supporting Davis's description of his injuries—other than his own claims. <u>See</u> <u>Bove</u> at *6 ("There are no affidavits from the plaintiff's treating physicians or psychologists, no hospital records—in short,

nothing to substantiate . . . the alleged 'beating' by the NYPD . . . . All the record contains for purposes of this motion are [plaintiff's] bald and conclusory allegations which are insufficient to withstand a motion for summary judgment."); accord Jeffreys v. City of New York, 426 F.3d 549, 552 (2d Cir. 2005) ("[I]n the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account.") (citation omitted).  Accordingly, plaintiff's excessive force claim is dismissed.

III.   Unlawful Strip Search

Relatedly to his excessive force claim, the Court construes his complaint to advance a claim for an unconstitutional strip search in violation of the Fourth Amendment.  The Second Circuit recently clarified its long-standing rule that the strip search of an individual arrested for either a misdemeanor or felony "must be justified by an individualized reasonable suspicion of concealed weapons or contraband."  Gonzalez v. City of Schenectady, 2013 U.S. App. LEXIS 17943 at *47 (2d Cir. 2013).  Here, Davis possessed a concealed weapon (a pair of pliers) when he was arrested, and ultimately was charged with criminal possession of a weapon.  Davis' possession of a concealed weapon—along with his erratic and violent behavior—established individualized reasonable suspicion and justified the officers' strip search of a prisoner, while at the precinct.  Azor v. City of New York, 2012

9

U.S. Dist. LEXIS 47067 (E.D.N.Y. 2012) ("Because [officers] arrested [plaintiff] for possessing a hidden weapon . . . they had reasonable suspicion justifying a strip-search for additional concealed weapons before booking him.")  Accordingly, plaintiff's claim for an unconstitutional strip search is dismissed.

<u>Conclusion</u>

For all of the above reasons, upon their motion, summary judgment is granted in favor of all defendants.  This action is dismissed.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment and to close this case.


SO ORDERED.

Dated:      Brooklyn, New York
            October 17, 2013              /S/ Judge Eric N. Vitaliano
                                          _____
                                          **ERIC N. VITALIANO**
                                          **United States District Judge**